# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
)
)
v. ) I.D. No.: 1802012108
)
)
DERRICK CAUDLE, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Submitted: August 6, 2018
Decided: September 5, 2018

*Upon Consideration of Defendant's Motion to Transfer Charges to Family Court,*
**DENIED.**

Matthew B. Frawley, Esquire, and Colleen E. Durkin, Esquire, Deputy Attorneys General, Department of Justice, Wilmington, Delaware. *Attorneys for the State.*

F. Phillip Renzulli, Esquire and Joseph M. Leager, Esquire, Wilmington, Delaware. *Attorneys for the Defendant.*

**MEDINILLA, J.**

## INTRODUCTION

Derrick Caudle ("Defendant") is charged with Murder First Degree and Possession of a Firearm During the Commission of a Felony ("PFDCF") as the result of a fatal shooting that occurred on February 18, 2018 when Defendant was sixteen years of age.[1] As a preliminary matter, because the State has charged Defendant with one count of PFDCF, this firearm charge remains in this Court,[2] and Defendant will not be spared Superior Court proceedings regardless of his arguments for transfer of the Murder First Degree charge.[3] Defendant thus only seeks this Court transfer the Murder First Degree charge under 10 *Del. C.* § 1011. After considering the submission of the parties, the parties' oral arguments at the reverse amenability hearing, and the record in this case, the Court finds that the § 1011(b) factors do not weigh in favor of transferring Defendant's charge of Murder First Degree to Family Court. Therefore, Defendant's Motion to Transfer is **DENIED**.

---

[1] Defendant's date of birth is January 15, 2002.

[2] *See* 10 *Del. C.* § 1011 (2013 & Supp. 2016); 11 *Del. C.* § 1447A.

[3] *See generally State v. Anderson,* 697 A.2d 379 (Del. 1997) (answering certified questions; holding weapons charges for defendants age 16 and older are not subject to transfer to Family Court, while reverse amenability hearing is permissible for charges properly joined with weapons charges).

## FACTUAL AND PROCEDURAL BACKGROUND[4]

The State called two witnesses. First, Chief Investigating Officer Detective Womer testified that Defendant and the victim agreed to engage in a fight on February 18, 2018 that took place in front of Defendant's house. He further testified that video footage captures the altercation between Defendant and the victim, depicting several landed and missed punches thrown from both individuals. Eyewitnesses recounted to law enforcement that immediately after the fight, Defendant went into his house and returned with a shotgun. He then approached the victim, placed the shotgun within close range of the victim's chest, and may have directed the victim to put his chin up before the fatal shot was fired.

As part of the homicide investigation and immediately following the shooting, law enforcement identified Defendant as the shooter. He provided at least two different versions of what transpired before the shooting. His versions varied from the eyewitnesses' accounts, suggesting that the firearm went off accidentally after a physical struggle ensued for control of the weapon. Defendant was arrested on the same day of the shooting and has been held since at the New Castle County Detention Center for the Division of Youth Rehabilitative Services ("YRS") of the Department of Services for Children, Youth & their Families ("DSCYF").

---

[4] The recitation of the facts is presented from the record established through the testimony of the witnesses and exhibits presented at the reverse amenability hearing on August 6, 2018.

3

The State then called Jennifer Skinner, the Master Family Services Specialist Supervisor of YRS, who testified regarding Defendant's current YRS placement, his past criminal history, and the various placements through YRS. Her report was also entered into evidence.[5] She set forth the reasons why Defendant is not amenable to the services offered at YRS.[6]

To counter, and in support of a transfer under 10 *Del. C.* § 1011, Defendant called Laura Cooney-Koss, Psy.D, who conducted a psychological evaluation dated June 12, 2018, and opined in her report that Defendant is amenable to the rehabilitative services of the Family Court.[7] Defendant also submitted exhibits to include a letter from The Office of Defense Services dated August 2, 2018, requesting that YRS provide copies of all policy directives, protocols, rules and regulations governing the operations of YRS that mandate services to youth to—or beyond—age 19, and their processes for servicing youth with pending adult charges.[8] YRS responded accordingly citing various provisions of the Delaware Code, including but not limited to, 31 *Del. C.* §§ 5101, 5107, 5108, 10 *Del. C.* §§

---

[5] State's Exhibit 2, (submitted Aug. 1, 2018) [Skinner's Report].

[6] *Id.*

[7] Defense Exhibit B, (dated July 23, 2018) [Cooney-Koss Report].

[8] *See* Defense Exhibit C, Letter from Office of Defense Services to Jennifer Skinner (dated August 2, 2018).

4

901(4) and (5), and 10 *Del. C.* §§ 1009(c)(3), (9), and (13). [9] With respect to what services are provided to a youth with pending adult charges, YRS cited to 10 *Del. C.* § 1007 to confirm that medical care, education, and psychiatric and psychological services are provided.

## STANDARD OF REVIEW

The reverse amenability process is meant to identify those juveniles charged as adults who are amenable to the rehabilitative processes of the Family Court. [10] If the juvenile files a motion to transfer the adult charges, this Court must hold a reverse amenability hearing and weigh the factors set forth in 10 *Del. C.* § 1011(b). [11]

Under § 1011(b), the Court may consider evidence of: (1) "[t]he nature of the present offense and the extent and nature of the defendant's prior record, if any;" (2) "[t]he nature of past treatment and rehabilitative efforts and the nature of the defendant's response thereto, if any;" (3) "[w]hether the interests of society and the

---

[9] A third question from ODS asked YRS to respond to "DYRS shall not provide services to a youth when the youth is convicted of adult charges either prior to, concurrent, or subsequent to a juvenile adjudication in the Family Court." YRS responded that it could not answer "because the wording is unclear…[and] not relevant to this case." *Id.* at 2.

[10] *See generally* 10 *Del. C.* §§ 1010-11 (2013 & Supp. 2016). *See Hughes v. State,* 653 A.2d 241, 249 (Del. 1994) (quoting *Marine v. State,* 624 A.2d 1181, 1184 (Del. 1993)[hereinafter *Marine II*]; *Marine v. State,* 607 A.2d 1185, 1209 (Del. 1992)[hereinafter *Marine I*]).

[11] *See, e.g., State v. Harper,* 2014 WL 1303012, at *5–7 (Del. Super. Mar. 31, 2014).

defendant would be best served by trial in the Family Court or in the Superior Court;" and any "other factors which, in the judgment of the Court are deemed relevant."[12]

Before the Court weighs these factors, however, "the Court must preliminarily determine whether the State has made out a *prima facie* case against the juvenile, meaning whether there is a fair likelihood that [Defendant] will be convicted of the crimes charged."[13] There is a fair likelihood that the defendant will be convicted if, after reviewing the totality of the evidence presented, it appears that, if the defense does not sufficiently rebut the State's evidence, "the likelihood of a conviction is real. . . ."[14] Furthermore, "[a] real probability must exist that a reasonable jury could convict on the totality of the evidence assuming that the evidence adduced at the reverse amenability hearing stands unrebutted by the defendant at trial."[15]

## DISCUSSION

### *Fair Likelihood of Conviction*

Defendant argues that the State failed to establish a *prima facie* case because the only evidence that may rise to the requisite *mens rea* for a finding of Murder First Degree was the allegation that Defendant told the victim to put his chin up

---

[12] 10 *Del. C.* § 1011(b).

[13] *Harper*, 2014 WL 1303012, at *5 (citing *Marine II*, 624 A.2d at 1185 (Del. 1993)).

[14] *State v. Mayhall*, 659 A.2d 790, 792 (Del. Super. 1995).

[15] *Id.*

6

before he pulled the trigger. Thus, Defendant argues that, at best, the State can only establish elements for a Murder Second Degree conviction. This Court disagrees.

The State's proffer includes the introduction of evidence through various eyewitnesses that Defendant made several conscious decisions. First, he returned to his house after he engaged in a fight with the victim and made a decision to obtain a shotgun. Second, eyewitnesses told law enforcement that Defendant came out with a weapon and proceeded to walk toward the victim. The accounts then establish that he further decided to point the weapon within close range of the victim. The jury could consider whether or not to believe what, if anything, the Defendant told the victim before he decided to pull the trigger, as well as his version of how the events occurred. On the charges of Murder First Degree and PFDCF, this Court finds that there remains a fair likelihood that Defendant will be convicted of the charged offenses.[16]

Defendant argued there may exist potential inconsistencies with the eyewitness accounts that may prove helpful to the defense but, at this juncture, there

---

[16] Originally, this threshold analysis—the requirement that the State establish a *prima facie* case against the defendant at the reverse amenability hearing—derived from what is today the first prong of the § 1011(b): "nature of the present offense." *Marine I*, 607 A.2d at 1211–12. This showing was analogized to a "proof positive" hearing. *Id.* "In each situation, a judicial examination of the evidentiary justification for the charging decision is required." *Id.* at 1212 (citing *In re Steigler*, 250 A.2d 379, 383 (Del. 1969)).

Though the statute has been amended on several occasions over the past twenty-five years, this requirement has endured. This threshold analysis looks to the *charging* decision and its independent evidentiary basis.

remains a real probability that a reasonable jury could convict Defendant on the totality of the evidence, if unrebutted. Thus, the State has met its burden of demonstrating a *prima facie* case against Defendant with a fair likelihood of conviction at trial.

*Weighing The § 1011(b) Factors*

I.  **Section 1011(b) Factor One: Nature of Present Offense and the Extent and Nature of Defendant's Prior Record**

The first § 1011(b) factor inquiries into the nature of the present offense. No charge is more serious. By the State's account of how these events unfolded, Defendant's alleged behavior demonstrates a particular depravity, where he escalated what was a mutually planned fist fight into a unilateral decision to do much more. Although there was testimony that Defendant was in shock/denial that the victim (possibly his "friend") had died, and Defendant appeared remorseful, this Court only looks to the nature of the charge. Accordingly, the first prong of the first factor weighs heavily against transfer.

On the second prong of the first factor, Defendant's juvenile record was escalating toward more violent behavior. Although he only first became active with YRS in April 2017, the nature of the lead charge was Robbery First Degree, accompanied by Conspiracy 2nd, Assault 3rd, two counts of Criminal Mischief, and three counts of Harassment. The charges were pled down to a Conspiracy 3rd Degree. Unfortunately, while under community supervision, he was charged with

8

the same type of violent charge, this time an Attempted Burglary First Degree, accompanied with Conspiracy 2nd, Harassment, and two counts of Indecent Exposure 2nd Degree. [17] While on a low level contract placement, he is arrested on August 21, 2017 for yet more violent offenses; Burglary 2nd Degree, Theft Felony, and Conspiracy 2nd Degree. He again accepted a plea to Conspiracy 2nd Degree, and was once more placed on one year of community supervision.[18] While on probation, he is charged in this Court.

The defense argues that Defendant's criminal behavior was due in large part to the death of family members during this time period when his conduct was out of control. They suggest that this impulsive behavior are normal qualities of an adolescent brain, and this Court should give it the weight it has been given in recent Supreme Court decisions in the Eighth Amendment context known as the "mitigating qualities of youth."[19] This Court finds that while those cases are instructive on the issue of sentencing, here the focus is on the extent and nature of his record. His record was not extensive, but was escalating and dangerous. He had numerous opportunities to comply with the terms of his community supervision and

---

[17] *See* Skinner's Report at 1.

[18] *Id. at* 2.

[19] *Miller v. Alabama*, 567 U.S. 460, 476 (2012) (quoting *Johnson v. Texas*, 509 U.S. 350, 367 (1993)). *See also Montgomery v. Louisiana*, 136 S. Ct. 718 (2016); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005).

continued to engage in violent criminal behavior. Therefore, as to both prongs of factor one, the Court finds that they weigh against transfer.

## II. Section 1011(b) Factor Two: Nature of Past Treatment and Defendant's Response

Defendant's involvement with the juvenile justice system is short and limited. Defendant received support through initial programing yet continued to reoffend with violent behavior.[20] Although Ms. Skinner and Dr. Cooney-Koss disagree that Defendant is amenable to the services of Family Court, it is undisputed that Defendant did not respond to what little services were being offered through the Family Court and YRS. Whatever rehabilitative efforts were offered, they did nothing to deter his behavior. Thus, the second factor weighs against transfer.

## III. Section 1011(b) Factor Three: Interests of Society and Defendant

The State argues that the resources offered through YRS have failed to serve as adequate safeguards to the community or as corrective measures for the Defendant. The Court agrees. With as many times as he reoffended while under community supervision through Family Court, this Court finds that it is in the best interest of society to keep him in this Court. Even though it may be in the best interest of Defendant to return to Family Court for a few years of rehabilitative services, the services have not worked. Where it is appropriate for this Court to

---

[20] *See* Skinner's Report at 2.

continue to monitor and provide services as he transitions into adulthood, this factor weights against a transfer.

## IV. Section 1011(b)'s Catchall Provision: Any Factors Deemed Relevant

Lastly, the defense argues that the State has presented evidence through YRS that misapplies relevant statutory provisions related to Defendant's rehabilitative options. Defendant argues that by misinterpreting the provisions that mandate YRS to provide services, the rehabilitative window has been improperly closed by two years from age twenty-one to nineteen. The defense asks this Court to interpret the statute in his favor and send him back to Family Court.

The defense raises particular concerns regarding Ms. Skinner's changed testimony from her prior rationale in *State v. Bailey*[21] regarding the YRS cap to provide services to youth to age nineteen. In *Bailey,* Ms. Skinner testified that YRS is mandated to provide services to youth to age nineteen, regardless of whether the Family Court extends its jurisdiction to twenty-one. She also confirmed that YRS will not provide services while the youth has pending *charges* as an adult offender.[22] Ms. Skinner testified that these mandates were based, in part, on YRS policies/practices, and testified that they did not appear to be statutorily mandated. Thus, the Court factored these *practices* into its decision against transferring

---

[21] 2017 WL 838223 (Del. Super. Mar. 2, 2017).

[22] *Id.* at *6.

Defendant Bailey back to the Family Court, finding that it would not benefit him to get stuck in two systems awaiting services.

Different from her testimony in *Bailey*, the defense takes issue that Ms. Skinner no longer relies on practices/procedures to explain YRS' processes for delivering services to youth. This time she relied instead on the statutory provisions under 31 *Del. C.* §§ 5101, 5107, 5108, 10 *Del. C.* §§ 901(4) and (5), and 10 *Del. C.* §§ 1009(c)(3), (9), and (13). Defense suggests that where her interpretations are incorrect, they are also inconsistent and should be disregarded in favor of Defendant's interpretation. [23] This Court cannot simply disregard the evidence as presented.

Ms. Skinner testified as to what, how, and when YRS services are delivered to their youth. The testimony was not challenged. No testimony was offered to suggest that YRS should or can service youth beyond age nineteen. No witnesses were called nor authority cited to suggest that YRS should be providing services to any age beyond nineteen. Nothing was introduced to suggest YRS is misinterpreting the law and no evidence was presented to suggest that YRS should be mandated to do more than what its representative said it can do.

---

[23] In fairness to the State, it was not on notice that YRS was going to be challenged regarding statutory interpretations related to its custodial obligations of their youth. This Court will not delve into the language of the various provisions of the statutes because the issues were raised only during oral arguments and not necessary for this ruling.

As to this last "catchall" factor, this Court cannot simply determine that Defendant is entitled to more youth rehabilitative services, as argued, without evidence to support a different read of the relevant statutes. While certain provisions of the Delaware Code *may* suggest that services could be rendered beyond age nineteen, the Court cannot simply find that the law requires YRS to service Defendant differently or beyond age nineteen. Any clarification regarding such mandates upon YRS is for the legislature to address. Where the evidence in this record reflects that Defendant's services will be capped at age nineteen, for the reasons previously stated, it makes sense for the Murder First Degree charge to remain in this Court with the firearm charge.

## CONCLUSION

Under § 1011(b), the Court finds that all factors weigh against transfer. For the reasons stated above, Defendant's Motion is **DENIED**.

**IT IS SO ORDERED.**

Judge Vivian L. Medinilla

oc:   Prothonotary
cc:   The Honorable Richard R. Cooch
       Defendant
       Matthew B. Frawley, Esquire
       Colleen E. Durkin, Esquire
       F. Phillip Renzulli, Esquire
       Joseph M. Leager, Esquire
       Jennifer Skinner, Master Family Service Specialist Supervisor

13